**In the Interest of R.E. and T.E., Minor Children**

**B.E., Mother, Appellant.**

No. 90–574.

Court of Appeals of Iowa.

Sept. 26, 1990.

Karla J. Fultz, Des Moines, for appellant mother on the brief only.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellee State.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

HAYDEN, Judge.

The children in question are boys born in May 1980 and July 1984. Their father is deceased. This proceeding concerns the termination of their mother's parental rights.

The facts leading to the State's termination petition are not in issue in this appeal. While in the mother's care the children suffered broken bones, sexual abuse, emotional abuse, and profound physical and emotional neglect. The mother caused the children to live in filthy conditions, with inadequate food, personal hygiene, and medical care. The mother has a history of mental illness, psychiatric hospitalization, and homelessness. The children have been in foster care for much of their lives.

After the State filed its petition to terminate the mother's parental rights under Iowa Code chapter 232, it developed that the mother could not be located. A juvenile court officer filed an affidavit stating he had made a diligent search for the mother but had been unable to locate her. The juvenile court then issued an order pursuant to Iowa Code § 232.112(1) dispensing with notice to the mother. Notice by publication was apparently never attempted.

After a hearing at which the mother appeared by counsel but not in person, the juvenile court terminated the mother's parental rights on the ground of abandonment.

The mother has appealed from the termination order. She challenges only the fact that termination was accomplished without any notice to her or personal appearance by her. She contends the juvenile court order dispensing with notice to her (1) denied her due process; (2) denied her equal protection by treating her differently than a parent whose rights are terminated under Iowa Code chapter 600A; and (3) violated § 232.112(1) because the State had not employed due diligence to locate her.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App.1988) (citing to *Dameron*, 306 N.W.2d at 745); *see also In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).

## I. Due Process

■ The sole issue on appeal is whether the mother in this case was deprived of notice of this action, thus denying her constitutional due process rights. We note the appellant mother does not attack the constitutionality of the statute itself.

The trial court dispensed with personal notice to the mother by authority of Iowa Code § 232.112(1):

Persons listed [living parents of the child, guardian, custodian, guardian ad litem, petitioner, person standing in place of the parents] shall be necessary parties to a termination of parent-child relationship proceeding and are entitled to receive notice and an opportunity to be heard, except that notice may be dispensed with in the case of any such person whose name or whereabouts the court determines is unknown and cannot be ascertained by reasonably diligent search.

Iowa Code § 232.112(1).

When any aspect of a normal service process is dispensed with, a review of the facts is required to determine the appropriate level of diligence by the state and the type of notice required. *See Catholic Charities v. Zalesky*, 232 N.W.2d 539, 546–47 (Iowa 1975). The notice must be reasonably calculated to apprise the parent of the pending proceeding in light of the circumstances concerning that particular parent. *Id.*

### 1. The Ingraham Test.

In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the Supreme Court restated the three factors long considered to constitute the analytic framework for determining the procedural safeguards required by due process. The analysis requires consideration of:

[F]irst, the private interest that will be affected ...: second, the risk of an erroneous deprivation of such interest ... and the probable value, if any, of additional or substitute procedural safeguards; and finally the (state) interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 675, 97 S.Ct. at 1414–15, 51 L.Ed.2d at 733, citing to *Mathews v. Eldridge,* 424 U.S. [319,] 335, 96 S.Ct. [893,] 903, 47 L.Ed.2d [18,] 33 [ (1976) ].

*Patten v. Patrick,* 276 N.W.2d 390, 394 (Iowa 1979).

Utilizing the criteria outlined in *Ingraham,* and *Patten,* we turn to the present case.

The first factor is obvious: the mother's parental interest will be affected if her parental rights are terminated. The third factor in *Ingraham,* the state interest involved and the fiscal and administrative burden imposed, is not a material issue in this case.

The second factor is the risk of error and the probable value of additional or substitute procedural safeguards. In this case, there was little risk of error. Neither party disputes the egregious underlying problems and abuses in this case. The children have been subjected to sexual and physical abuse. They have suffered broken bones, filthy living conditions, and apparent prolonged abandonment by the mother. They have already endured three years of out-of-home placement in Texas, including two years in foster homes. A Texas case concerning the children had been underway for at least five years before the children came to Iowa. The father appears to be deceased at the time of this proceeding.

The probable value of additional or substitute safeguards in this case is negligible. The alternatives in this case to the reasonable search are notice by certified mail, and notice by publication. "Briefly stated, a notice by publication to an identity or address unknown putative father, within the ambit of adoptions, would ordinarily be an exercise in futility." *Catholic Charities,*

232 N.W.2d at 548 (citing to *General River Dam Authority v. Going,* 29 F.Supp. 316, 325 (N.D.Okl.1939).

The rationale in *Catholic Charities* directly applies to this case. The mother in the present case disappeared after the initial hearings in the prior child in need of assistance (CHINA) case. She failed to come to any of the later hearings, although she obviously had notice of the continuing nature of the CHINA proceedings, at least until disposition.

In reality, this termination proceeding merely constituted a continuation of the CHINA proceeding. Because the mother can be reasonably expected to know of the continuing nature of the CHINA proceeding, she should be on notice of this termination proceeding as well.

This case is analogous to *In re H.R.K.* There the Iowa Supreme Court rejected allegations the petition involved did not adequately apprise the parents of the factual basis of the allegations against them.

> In view of the lengthy case history and the many court proceedings which preceded the termination petitions in this case, we are convinced that the parents were sufficiently apprised of the factual basis upon which termination was being sought.

*In re H.R.K.,* 433 N.W.2d 46, 49 (Iowa App.1988).

In the *Catholic Charities* case, the putative father claimed denial of due process because of lack of notice concerning termination of his parental rights. In that case, the Iowa Supreme Court quoted with approval:

> "The impending birth of an illegitimate child carries the potential for warning the putative father of the possibility of forthcoming proceedings which will affect his rights.... Given this opportunity for knowledge, it is reasonable to permit self-information as the unknown putative father's sole means of notice."

*Catholic Charities,* 232 N.W.2d at 548 (quoting Note, *The "Strange Boundaries" of Stanley: Providing Notice of Adoption*

*to the Unknown Putative Father*, 59 Va.L. Rev. 517, 530 (1973)).

The mother in this case had notice of the ongoing CHINA action. Indeed, she was initially present at that proceeding. In the middle of that proceeding, she chose to disappear. She knew some dispositional action would be taken by the trial court in the CHINA action. The termination proceeding followed immediately after the CHINA action. The CHINA actions constituted the underlying basis for the termination. The termination was in effect merely the continuation and disposition of the CHINA action.

### 2. *Notice to Attorney.*

The mother's attorney, who was also acting as her guardian ad litem, had notice of the termination. The attorney filed a motion to dismiss for failure to personally serve the mother. The trial court overruled the motion.

At the beginning of the termination hearing, the trial judge questioned the mother's attorney concerning the attorney's contacts with the mother:

THE COURT: Have you had any contact with your client?

MS. FULTZ: Your Honor, I believe that's privileged.

THE COURT: When was the last time you actually saw her?

MS. FULTZ: Your Honor, I had a face-to-face contact with my client at the time of the pre-trial conference.

THE COURT: Did you have any conversation about this hearing today? I'll rephrase that. Since the commencement of the termination of parental rights proceedings, have you had any—have you given her notice of the hearing today?

MS FULTZ: Your Honor, I do not believe that it is my duty to give her notice. Due notice is the duty of the State of Iowa.

THE COURT: I understand that, but did she indicate to you that she was aware of the hearing today?

MS. FULTZ: Your Honor, she is not aware of the hearing today. That is why notice is so important.

Counsel for the mother represented the mother's interests continuously throughout both the CHINA and the termination actions. Counsel has performed her task ably and competently during the course of these proceedings. "It is a familiar rule that notice to an attorney in respect to a matter in which he is then acting for a client is notice to the client." *Perpetual Savings & Loan Association v. Van Atten*, 211 Iowa 435, 438, 233 N.W. 746, 747 (1930).

"... Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 888 (Iowa 1981) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740 (1962), *reh. denied*, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112.

In *Farnsworth [v. Hazelett*, 197 Iowa 1367, 1373, 199 N.W. 410, 412, 38 A.L.R. 814, 819 (1924)] we noted that there are four exceptions to the general rule that knowledge of the attorney is chargeable to the client: (1) the knowledge possessed by the attorney came from a privileged source and is therefore not legally or properly communicable to the client; (2) the attorney had a personal interest that was adverse to the client; (3) the attorney acted fraudulently; or (4) the particular facts of the case allow the general rule to be avoided. We also noted that we did not consider the fourth exception to be well defined or the reasons therefore to be well based.

*Moser v. Thorp Sales Corp.*, 312 N.W.2d at 888.

In our review of the record in this case, we have not discovered any of these exceptions to be present.

### 3. *Diligent Search.*

Finally, the mother contends the efforts by the state official to locate her "dis-

play[ed] a decided lack of diligence." However, the record demonstrates the state official displayed the requisite diligence necessary for such a determination.

The state official contacted various friends and acquaintances of the mother, as well as her former landlord. He contacted the children's school, and checked with the post office, telephone company, and city directory. He went to the various missions around town and requested they contact him if the mother was to visit them. Even her own attorney was unable to provide him with any information as to the mother's whereabouts.

We hold the mother had sufficient notice of the termination proceeding. She was apprised of the fact some dispositional hearing and order would be rendered by the trial court. The preceding CHINA action constituted constructive notice of the impending dispositional hearing. *Cf. In re H.R.K.*, 433 N.W.2d at 49. The mother's attorney had notice of the termination, and had pre-trial contact with her client. The state official performed the requisite reasonable diligent search.

The mother cannot now be heard to complain she was denied notice when she voluntarily absented herself at the CHINA proceeding which led to the termination action. We affirm the trial court on this issue.

## II. *Equal Protection*

■ The appellant mother also contends the differing provisions of Iowa Code §§ 232.112(1) and 600A.6(5) (1989) constitute a denial of equal protection. Iowa Code § 232.112(1) provides for dispensing with notice in termination cases where the whereabouts of a necessary party are not known. Iowa Code § 600A.6(5) provides for termination after notice by publication to a necessary party who cannot be located.

The mother's argument ignores the fact there are differences between chapter 600A termination actions and chapter 232 termination actions. Chapter 600A is designed to facilitate such voluntary actions as step-parent adoptions. Chapter 232 terminations, on the other hand, are generally involuntary. They are not commenced until the juvenile court has made an order concerning the child pursuant to the provisions of the child in need of assistance proceedings of the Iowa Code. That order must be in force at the time the petition for termination is filed. Iowa Code § 232.109 (1989).

Given this distinction, it is not irrational to provide parties to 600A actions with more notice than those in 232 actions. The 600A parties are less likely to have knowledge legal action in regards to their children is underway.

One who challenges a statute as unconstitutional

assume[s] a heavy burden as the following propositions are well established. Ordinarily statutes regularly enacted by the legislature will be accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the legislation attacked. One who challenges legislation on constitutional grounds has the burden to negate every reasonable basis upon which the statute may be sustained. *Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere.* Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the Constitution.

The judicial branch of the government has no power to determine whether the legislative Acts are wise or unwise, nor has it the power to declare the Act void unless it is plainly and without doubt repugnant to some provision of the Constitution.

*Roth v. Reagen*, 422 N.W.2d 464, 467 (Iowa 1988) (quoting *State v. Hall*, 227 N.W.2d 192, 193 (Iowa 1975)) (emphasis added).

"[S]tates have authority to statutorily treat different classes of persons in different ways, provided such classification is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation so as to treat alike all persons similarly circumstanced." *Catholic Charities*, 232 N.W.2d at 545 (citing to *Reed v.*

*Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971).

The different treatment accorded the different classes of persons under § 600A.6(5) and § 232.112(1) is justified by their different postures before the law. This difference and the different goals of the two statutes afford the rational basis underlying these laws. The legislative recognition of this difference is not unconstitutional. We uphold the constitutionality of § 232.112(1) as applied to the mother in this case.

We determine the search for the mother was diligent as required by § 232.112(1). The trial court's dispensing with the requirement of notice pursuant to § 232.112(1) was in accordance with the statutory mandate. We determine the mother's constitutional due process rights were not violated by the trial court's order dispensing with notice under Iowa Code § 232.112(1). We affirm the ruling of the trial court.

AFFIRMED.