**IN THE COURT OF APPEALS OF IOWA**

No. 17-1105
Filed September 13, 2017

**IN THE INTEREST OF W.G.,**
**Minor Child,**

**J.G., Father,**
         Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Eric W. Manning of Manning Law Office, P.L.L.C., Urbandale, for appellant father.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Lynn M. Vogan of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

A father appeals the termination of his parental rights to his child, W.G., born in October 2015.  His primary assertion on appeal is that he should be given an additional six months to progress to reunification with W.G.  However, because the father has been incarcerated for most of the time since W.G. was removed from the home, he has made little progress in advancing towards reunification, and the earliest he could be paroled would be in April 2018, we affirm the termination of the father's parental rights.

W.G. came to the attention of the Iowa Department of Human Services (DHS) on July 26, 2016, on the allegation the mother and the father left W.G.— then just ten months old—and a two-year-old half-sibling alone for an unknown period of time.  The father was using, as well as selling, drugs in the home.[1] Drug paraphernalia, including spoons with methamphetamine residue and needles, was found in various places in the house and was accessible to the unattended small children.  In a subsequent interview, the father admitted he had been using methamphetamine for several months, and W.G. tested positive for methamphetamine after his removal.  The father was arrested on various charges on July 26, 2016.[2]  He pled guilty to four counts of forgery and one count of prescription drug violation on October 18, 2016.  Although released on October 27, 2017, to enter a substance abuse program, he was rearrested on

---

[1]The use of illegal substances in the home and the sale of drugs out of the home were also attributable to the mother, but all facts herein refer only to the father.  The mother's parental rights were also terminated; she does not appeal.  The half-sibling's father is not the father of W.G.

[2] Although the removal order was filed August 25, 2016, W.G. was informally removed and placed with family members on July 26, when both parents were arrested.

November 17 for failure to return to jail. He was reincarcerated in March 2017 on two counts of violating his probation and on new charges including burglary and interference with official acts; a twenty-two-year prison term was imposed.

After a May 22, 2017 contested hearing, at which the father testified telephonically from prison, the district court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (h) (2017).

We review termination proceedings de novo, giving weight but not being bound by the district court's fact findings. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

Before we address the merits of the father's appeal, we must determine whether the district court erred in proceeding with the termination hearing when the father had not been served with notice of the hearing as required in Iowa Code section 232.112, which provides:

> 1. [Parents] shall be necessary parties to a termination of parent-child relationship proceeding and are entitled to receive notice and an opportunity to be heard . . . .
> . . . .
> 3. Notice under this section shall be served personally or shall be sent by restricted certified mail, whichever is determined by the court to be the most effective means of notification. Such notice shall be made according to the rules of civil procedure relating to an original notice where not inconsistent with the provisions of this section. Notice by personal delivery shall be served not less than seven days prior to the hearing on termination of parental rights. Notice by restricted certified mail shall be sent not less than fourteen days prior to the hearing on termination of parental rights.[3]

---

[3] While the father makes one citation to "due process," his argument is a challenge as to whether the State served notice under our Iowa court rules, and not under the United States or Iowa Constitutions.

The county attorney explained the notice had been faxed to the last known address of where the father was being held, the Iowa Medical and Classification Center (Oakdale), on April 28; however, he was apparently moved to Clarinda Correctional Facility, and the notice missed him in transition. The county attorney's office later filed an affidavit as to the notice served on the father. The father's attorney objected to both the lack of service and the process, asserting "faxing" does not comply with the rule for service. As a remedy he requested a six-month extension of time before the termination hearing was held.

The court noted: "Clearly [the father's] been in transition from—during the course of this case to at least five different either jail, prison, or community-based correctional facilities, so I understand." Moreover, the father's attorney acknowledged he had been properly served with notice of the termination hearing, through EDMS (Electronic Document Management System).

On May 18, the father's attorney filed a motion for the father to appear telephonically at the termination hearing, which the court granted that same day. Because the father was well aware of the pending termination, his attorney was served with notice, and the father was in contact with his attorney and participated in the hearing, we find the error in service does not void the termination proceeding such that the father's request for a six-month hearing delay should have been granted. *See In re R.E.*, 462 N.W.2d 723, 727 (Iowa Ct. App. 1990) (holding mother had sufficient notice of the termination proceeding as she was apprised of the upcoming course of the proceedings, her attorney had notice of the hearing, and the attorney had pretrial contact with the mother).

Next, the father challenges the district court's findings under Iowa Code section 232.116(1)(e) and (h), primarily asserting he should have been given six more months to work towards reunification with W.G. We will address his challenge to 232.116(1)(h).[4] *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) (stating when rights are terminated on more than one statutory ground, the reviewing court may affirm the juvenile court's order on any ground supported by the record).

Specifically, the father takes issue with the district court's findings under (h)(4), asserting that he made the maximum effort he could make given his circumstances, and he should be able "to demonstrate that he could live in the community with a sober lifestyle and demonstrate adequate care of his child." Since the father was incarcerated in July 2016, he has seen W.G. one time, on November 9, 2016. As the DHS worker testified, the father has either been "on the run or incarcerated throughout the case." The worker met with the father several times while he was incarcerated, offering him mental health and substance abuse evaluations and treatment, but other than securing a mental health evaluation and spending a few days at a substance abuse treatment program (from October 26 to November 10, 2016), the father failed to follow

---

[4] Paragraph (h) provides termination is warranted if,

The court finds that all of the following have occurred:
(1) The child is three years of age or younger.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

through with offered services. The DHS worker testified, "Instead of taking advantage of those opportunities, he continued in criminal activity, which took away from him seeing and having visits with [W.G.]." As for why he had not participated in offered services, the father testified, "I don't know. I was just overwhelmed with everything going on."

The father, requesting a six-month extension of the termination proceedings, asserted he was due for an annual review on April 6, 2018, at which time he was hopeful he would be granted parole. If a six-month extension from the termination hearing was granted, it would have expired in November 2017. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." The father's hope to be paroled in April 2018 is well past that time frame. Moreover, waiting until April 2018 would result in W.G. being out of his father's care over one and one-half years, at which time W.G. would be two and one-half years old. A child needs a parent and cannot put off childhood until the parent gets out of prison. *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987). The record does not support the granting of such an extension.

As to W.G.'s best interests under Iowa Code section 232.116(2), the district court stated:

> What [W.G. has] been through in [his] young li[fe], and where [he's] at and what [his] needs are now, we can't wait. We certainly can't wait until April 2018 and we can't wait longer than that potentially to make sure [he] know[s] where [he's] going to grow up and who's going to meet [his] needs. . . . [I]t's just a matter of meeting [his] daily and—since daily needs sets permanency, making sure [he's]

> cared for, making sure [he's] safe. [This is a] vulnerable, young kid who needs to have those things done.

*See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (stating that a child's safety and the child's need for a permanent home are the "defining elements" in determining a child's best interests).

The father also asserts he "had a history of being bonded" to W.G., which should impede the termination or his parental rights. However, the district court found no impediments to termination, and we agree. W.G. was only ten months old when the father was incarcerated, and any bond that may have existed at that time has long since been diminished by the father's own actions through his criminal conduct and incarceration. We agree with the district court the statutory grounds were proven by clear and convincing evidence, there were no impediments to termination, and it is in W.G.'s best interests that his father's parental rights be terminated.

**AFFIRMED.**