## IN THE COURT OF APPEALS OF IOWA

No. 18-0656
Filed July 5, 2018

**IN THE INTEREST OF E.F.,**
**Minor Child,**

**B.F., Mother,**
       Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Gina E. Verdoorn of Carr Law Firm P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Erin E. Mayfield of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights to her child. She contends the State failed to provide her adequate notice of the termination hearing and prove the statutory grounds for termination by clear and convincing evidence. She additionally contends termination is not in the child's best interests and requests additional time to reunify with her child.

## I.    Background Facts and Proceedings

E.F. was born in May 2017 and came to the attention of the Iowa Department of Human Services (DHS) after the child tested positive for amphetamine at birth. During DHS's investigation, the mother admitted to methamphetamine use throughout her pregnancy. Upon the child's discharge from the hospital, he was removed from the mother's care and placed in the care of his maternal great-grandmother. The mother previously received services as a result of the court's intervention with two of her older children due to her substance-abuse issues, however she was unsuccessful with addressing those issues. Her parental rights to those children were terminated in March 2015. This child was adjudicated to be a child in need of assistance (CINA) on June 23 and remained in the great-grandmother's care.

On July 14, the child's placement was modified to foster care because the great-grandmother was not deemed a suitable long-term placement due to the great-grandmother's age and the child's young age, along with reports that, during a prior case, the great-grandmother was dishonest with DHS and allowed unauthorized persons around the children placed in her care. The child was placed and has remained in the same foster-to-adopt home since that time. The child's

father was confirmed through paternity testing, but he repeatedly told DHS he wanted nothing to do with the child or the case and has not participated in any recommended services.

The mother was arrested in June for driving while barred. This, along with testing positive for methamphetamine, resulted in the revocation of her bond on a pending felony drug charge. The mother also obtained a substance-abuse evaluation in June, which resulted in a recommendation for residential treatment. However, she was unable to obtain services at that time due to her criminal matters.

In August, DHS received notification the mother was in an outpatient treatment program until such time that she was accepted into an inpatient program. She started an inpatient program on August 23 but left after one day. In September, the mother was on a waiting list for another inpatient program, which recommended she attend outpatient services until she was able to start, but the mother did not do so. The mother was to begin the inpatient program on October 2, but the mother failed to show up on that day. She was allowed to come in four days later to begin the program. Three weeks later, while meeting with DHS, the mother reportedly asked, "If I am not to get [the child] back, why am I here?" The mother was accepted into recovery court on December 12 but was unsuccessfully discharged on January 22, 2018, because she did not engage or attend and did not maintain contact with the court team.[1]

---

[1] The mother testified at the November 2017 permanency hearing that she began recovery court in early November. However, the court order is dated December 12.

The court held a contested permanency hearing on November 21, 2017, during which the mother testified she had not used methamphetamine for forty-six days, but prior to that time, she was using it on a daily basis. She requested an extension to allow more time for progress. Despite this period of sobriety, the court denied the request for an extension and found the record was insufficient to demonstrate a reasonable likelihood the mother would be able to regain custody within the next six months due to her lack of progress in this case as well as in her previous cases. In light of the mother's history of drug use, other treatment attempts, and lack of insight into her addiction, the court modified the primary permanency goal of reunification to termination of parental rights. The court allowed visitation to continue and the court encouraged the mother to remain in her treatment program to address her substance-abuse issues since no final determination had been made at that time. During the hearing, the court scheduled a termination pretrial conference for January 10, 2018, and a termination hearing for January 23.

On November 24, 2017, the mother did not return to the inpatient program after receiving a pass for an off-grounds meeting. She returned the following day and the program placed her on a behavioral management plan in which she would be immediately discharged from the program if she left again. Though the mother claimed she did not relapse, a urinalysis administered after she returned was positive for methamphetamine. On December 21, the mother left the program again and did not return. The mother was discharged from the program the following day without having successfully completed the program. DHS has not

received any information about the mother reengaging in any services since leaving the program.

Before attending the inpatient treatment program, the mother's visits with the child were inconsistent. While in the program, she did visit with the child four times per week, during which DHS reported she was attentive. The mother progressed to semi-supervised visits for a short time while she was in treatment, but otherwise her visits were supervised. The mother has not visited with the child since leaving the treatment program in December.

On December 20, the State petitioned the court to terminate the parental rights of the mother and father. On January 16, 2018, the State filed a motion to dispense with service of the petition on the mother, contending it had conducted a reasonably diligent search for her and, despite its efforts, it was unable to locate her. It provided an affidavit of diligent search by its investigator. The court issued an order pursuant to Iowa Code section 232.112(1) (2017) dispensing with notice to the mother.

On January 23, 2018, the mother and father both failed to appear for the termination hearing. At the hearing, the mother's counsel challenged the sufficiency of notice to her client and asked the court for additional time to allow the State to serve the mother by certified mail. The court denied the request. The court only heard the testimony of the DHS worker assigned to the case. Neither the mother's attorney nor the guardian ad litem (GAL) offered any independent evidence. The GAL argued in support of termination. On March 31, the juvenile court terminated both parents' parental rights to the child. Only the mother appeals.

**II.    Standard of Review**

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Our primary concern is the child's best interests. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III.    Discussion**

A.    Notice

The mother first claims she did not receive proper notice, asserting the State failed to provide notice as required under Iowa Code section 232.112, and the court therefore erred in declining to continue the termination hearing to allow the State to effectuate proper notice.[2]

On November 21, 2017, the court conducted a permanency hearing. The mother was personally present along with her counsel at that hearing. During that hearing the January 10 termination pretrial conference and January 23 termination hearing were scheduled. On December 20, the State filed its petition to terminate the parental rights of the mother and father. One week prior to the termination hearing, the State filed a motion to dispense with service, pursuant to section 232.112(1). The State provided an affidavit of diligent search from the investigator, who attested to the attempts she made to effectuate service upon the mother. The investigator identified she had searched national and local databases, made phone

---

[2] The mother's claims are based solely on statutory grounds, and she does not argue any constitutional violations.

calls, left messages, and went to the last known locations of the mother and left her business card. The investigator spoke with the mother on several occasions[3] and made arrangements with her on two different occasions to deliver the notice in person.[4]  On both occasions, the mother did not appear.  After the second attempt to meet in person, the mother did not respond to any further phone calls or text messages.[5]  The mother's attorney was unwilling to accept service of the paperwork on the mother's behalf.

The court granted the State's motion to dispense with service, finding the State had conducted a reasonably diligent search for the mother but her whereabouts could not be ascertained.  The mother did not appear at the termination hearing.  The mother's attorney asked for a continuance, arguing that although the court had already granted a motion to dispense with service, the State had not attempted to serve the mother through certified mail and asked for a continuance to allow for the attempt to be made at the address where the mother acknowledged finding the investigator's card.  However, the mother's attorney had no knowledge of the mother's whereabouts.  The court denied the request and proceeded with the hearing.

Section 232.112 provides:

> 1. [Parents] shall be necessary parties to a termination of parent-child relationship proceeding and are entitled to receive notice and an opportunity to be heard, except that notice may be

---

[3] During one phone call, the investigator spoke with a woman who denied being the mother.  The mother later admitted she was the woman the investigator spoke with and acknowledged finding the investigator's card at one of the locations she placed it at.

[4] One arrangement was to meet at the pretrial conference on January 10 as the mother stated she would be attending.  After not appearing, the mother agreed to meet at a location of her choosing later that day.

[5] The investigator also followed up twice at the location where the mother indicated she had found the investigator's business card, but no one answered the door.

> dispensed with in the case of any such person whose name or whereabouts the court determines is unknown and cannot be ascertained by reasonably diligent search.
>
> . . . .
>
> 3. Notice under this section shall be served personally or shall be sent by restricted certified mail, whichever is determined by the court to be the most effective means of notification.

"When any aspect of a normal service process is dispensed with, a review of the facts is required to determine the appropriate level of diligence by the state and the type of notice required." *In re R.E.*, 462 N.W.2d 723, 724 (Iowa Ct. App. 1990). "The notice must be reasonably calculated to apprise the parent of the pending proceeding in light of the circumstances concerning that particular parent." *Id.*

After a de novo review of the record, we agree with the court's determination to dispense with service, as the State made a reasonably diligent effort to notify the mother and her whereabouts could not be ascertained. The mother had actual knowledge of both the pretrial conference and the termination hearing, as she was personally present at the November 21 dispositional hearing during which the pretrial conference and termination hearing were scheduled. On two occasions, the mother failed to appear at locations she had selected to meet the investigator for personal service. The mother's attorney had no current information of the mother's whereabouts, and although the mother acknowledged finding the investigator's business card at one address, there is no indication in the record that this address was her residence. Additionally, no one answered the door during the several times the investigator went to that location. After she left the inpatient facility in December, there is no information as to the mother's residence or whereabouts and no reasonable likelihood certified mail would have been

delivered or accepted by her. We therefore affirm the court's order to dispense with service.

B. Statutory Grounds for Termination

"Termination of parental rights under chapter 232 follows a three-step analysis." *D.W.*, 791 N.W.2d at 706. "First, the court must determine if a ground for termination under section 232.116(1) has been established." *Id.* If a ground for termination is established, the court must, secondly, apply the best-interests framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights." *Id.* at 706–07. "Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707. We "shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "Even though the court may determine that termination is appropriate under section 232.116(2), the court need not terminate a parent's parental rights if any of the circumstances contained in section 232.116(3) exist." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).

"We will uphold an order terminating parental rights if there is clear and convincing evidence supporting the grounds for termination under Iowa Code section 232.116(1)." *D.W.*, 791 N.W.2d at 706. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). In this case, the juvenile court terminated the

mother's parental rights to the child pursuant to Iowa Code section 232.116(1)(g) and (h).

To terminate under section 232.116(1)(h), the State must show by clear and convincing evidence (1) the child is three years of age or younger, (2) the child has been adjudicated a CINA, (3) the child has been removed from the parent's care for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days, and (4) the child cannot be returned to the parent's custody at the present time. "At the present time" has been interpreted to mean at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707.

The mother does not dispute the establishment of the first three elements of paragraph (h). She contests element four, contending the State failed to prove the child could not be returned to her care at the time of the hearing because no evidence was presented concerning her living conditions and DHS was unaware whether the mother was engaged in substance-abuse or mental-health services.

Upon our de novo review, we find there is clear and convincing evidence the child could not be returned to the mother's care at the time of the termination hearing. The mother asserts that prior to December 22, she was living at the inpatient treatment and complying with expectations. She, however, neglects to mention anywhere in her petition on appeal that on November 24, she failed to return to the program after an off-grounds meeting. She also neglects to mention that when she returned the next day, she tested positive for methamphetamine despite her contention she had not relapsed. The mother again left the inpatient

treatment in December with the knowledge that if she did so, she would be discharged from the program.

Since her discharge, DHS has had no contact with the mother and was unsure of where she was living at the time of the hearing. DHS also had no information about whether she was continuing with any services for her substance-abuse and mental-health issues. The mother's attorney was unable to provide any information as to her whereabouts and had not communicated with the mother since the permanency hearing in November. She was discharged from recovery court in January 2018 because she failed to engage or attend. Nothing in our record shows where the mother has been residing since she left the inpatient treatment program or whether she has sought other treatment options since that time. The mother has not seen the child since she left the inpatient program in December.

Because we find the child could not be returned to the mother's care at the time of the termination hearing, we affirm the court's termination of the mother's parental rights pursuant to section 232.116(1)(h).

C. Best Interests and Extension

Next, section 232.116(2) requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is

capable of providing.'" *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777 (quoting *P.L.*, 778 N.W.2d at 41). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). If the child has been placed in foster care, we consider the extent to which the child has become integrated into that family. Iowa Code § 232.116(2)(b). For integration, we look at how long the child has been living with the foster family and consider the desirability of continuity for the child. *Id.* § 232.116(2)(b)(1).

The mother argues termination was not in the best interests of the child as reports established she was nurturing and caring and showed affection during her visitation with the child. The mother also argues that termination is not in the child's best interests as the child has biological family, including the child's grandmother and great-grandmother, and termination would legally sever those relationships. She further contends that because of the progress she made while in inpatient treatment, she should have been provided additional time to reunify with the child.

The mother's substance-abuse issues brought the child to the attention of DHS and the court, as he tested positive for amphetamine at birth. She was provided services during the pendency of her older children's cases and failed to maintain progress to address her severe substance-abuse issues, which ultimately resulted in the termination of her parental rights to those children. While the mother

was able to make some progress while in inpatient treatment during this case, she has not been able to sustain meaningful progress. The mother left her treatment program without authorization just a few days after the November 21 permanency hearing and, despite her assertion that she had not relapsed, she tested positive for methamphetamine.

Since she left the inpatient program in December, her whereabouts have been unknown and she has not reengaged in services to address her substance-abuse issues. The mother is not currently able to provide a safe, supportive, and structured home and is not in a position to be able to do so in the foreseeable future. We must consider each child's needs with a sense of urgency. *See C.B.*, 611 N.W.2d at 495. Further, the loss of the relationship of extended family members is not a factor to consider under section 232.116(3).

There is also nothing in the record that indicates the child has suffered or will suffer any detrimental effect due to the lack of contact with the mother. The child has never lived with his mother, as he was placed with his maternal great-grandmother when he was discharged from the hospital, five days after his birth. The mother never progressed beyond semi-supervised visits, which were allowed only for a short time. Only with the structure of the inpatient treatment program was the mother able to maintain consistent visitation with the child. Once she left the program in December, she has not seen the child.

The mother also admitted during the November 21 permanency hearing she did not have a strong bond with the child. DHS reported the child has bonded with his foster parents, who are willing and able to adopt him. The child "has never had

a permanent home. Termination will allow [him] to achieve permanency." *A.M.*, 843 N.W.2d at 113.

The mother also contends she should be granted additional time to reunify with the child given the progress she made in inpatient treatment. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a CINA, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

The mother was aware the court modified the permanency goal to termination in November, and the court cautioned her to continue with her treatment as that decision was not final. Despite knowing this, only a few days after the court hearing, the mother voluntarily left without authorization, failing to return to the program after a day-pass to attend on off-site meeting. She tested positive for methamphetamine upon her return. Less than a month later, the mother left the program with the knowledge that she would be unsuccessfully discharged if she left without authorization again. There is no evidence she has reengaged in any treatment program since that time. She has not visited with the child, and there is no evidence in the record she has inquired of the child's well-being since leaving the program. There is no evidence that she has stable housing, and her current whereabouts are unknown. Upon our de novo review, we agree with the juvenile court's determination that termination is in the best

interests of the child. Additionally, the need for removal continues to exist, and we do not find that additional time would change those circumstances.

Because the mother does not contest whether any statutory exceptions set out in section 232.116(3) apply, we do not address them. *See P.L.*, 778 N.W.2d at 40 (identifying that if a party does not dispute a particular step in the three-step termination framework, appellate courts need not address the issue). We therefore affirm the termination of her parental rights.

**AFFIRMED.**