## IN THE COURT OF APPEALS OF IOWA

No. 18-1683
Filed February 6, 2019

**IN THE INTEREST OF N.S., A.R., A.S.-R., and G.S.-R.,**
**Minor Children,**

**A.S., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Mary Jane Sokolovske, Judge.

The mother appeals the termination of her parental rights to her four children. **AFFIRMED.**

Douglas L. Roehrich, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Michelle Hynes of Juvenile Law Center, Sioux City, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals the termination of her parental rights to her four children, who at the time the termination order issued ranged in ages from six years old to two years.[1]  The mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(f), (h), and (*l*) (2018).  On appeal, she purports to challenge the statutory grounds, argues the children could be returned to her care in a reasonable time, and maintains termination of her rights is not in the children's best interests.

We review termination proceedings de novo.  *In re R.E.*, 462 N.W.2d 723, 724 (Iowa Ct. App. 1990).

We begin by considering the statutory grounds for termination.  *See In re P.L.*, 778 N.W.2d 33, 35 (Iowa 2010).  "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  Paragraphs (f) and (h) of section 232.116(1) contain similar elements.  Paragraph (f), which the juvenile court found applicable to G.S.-R. and A.S.-R., allows the court to terminate parental rights if it finds all of the following have been established by clear and convincing evidence:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

---

[1] The parental rights of the putative father of two of the children, who is also the legal father of the other two children, were also terminated.  No other male participated in the termination proceedings.  No father appeals.

> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). The juvenile court found paragraph (h) applicable to A.R. and N.S.; it allows the court to terminate when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

*Id.* § 232.116(1)(h).

The first three elements under each paragraph are undisputed, as at the time of the termination hearing, all four children had been adjudicated CINA and removed from the mother's care for more than fourteen months without any trial periods at home. And the mother also does not challenge the fourth element; she does not argue the children could have been returned to her care at the time of the termination hearing. *See id.* § 232.116(1)(f)(4), (h)(4); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" in the statutory language to mean "at the time of the termination hearing"). Rather, she asserts, "The concerns of the Department did not rise to the level of clear and convincing evidence . . . that the children could not be returned to mother within a reasonable period of time." By failing to challenge the statutory grounds upon which her parental rights were terminated, the mother has waived any alleged error by the

juvenile court.  *See In re H.L.*, No. 17-0357, 2017 WL 1736018, at *3 (Iowa Ct. App. May 3, 2017) (citing *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996)).

However, we understand the mother's claim the children could be returned to her care within a reasonable time as a challenge to the juvenile court's denial of the mother's request for additional time to work toward reunification.  *See* Iowa Code § 232.104(2)(b) (allowing the court to delay permanency for six months if the court "enumerate[s] specific factors, conditions, or expected behavior changes which" will allow the children to return home at the end of the of the extension).  In support of her claim, the mother states, "At the time of the termination hearing mother was cooperating with the Department of Human Services [(DHS]) and was doing everything that she could to receive custody of her children."

We acknowledge the mother participated in services and took other steps asked of her by DHS: she attended drug treatment and mental-health therapy, obtained a driver's license, and bought a car.  Based on notes from supervised visits with the children, she eventually adjusted to a new way of disciplining the children—there was a founded child-abuse assessment from a time during a semi-supervised visit when the mother left an injury on one of the children by disciplining her with a belt—and was able to exhibit some of the parenting techniques she had been taught.  But we are persuaded by the juvenile court's conclusion:

> It is difficult to ascertain if [the mother] has internalized the need to make changes in order to parent her children or if she is simply going through the motions in hopes of having the children returned to her care . . . .  She claims to have done everything expected of her.  The evidence indicates that she has taken a checklist approach to case plan requirements, i.e. focusing on being able to say she did everything but not demonstrating growth and change through participation in services. . . .
> . . . .

. . . While [the mother] has been able to demonstrate appropriate parenting skills during . . . visits, her skills, or lack thereof, have not allowed for the opportunity to parent all four children independent of the watchful eye of the [service] provider. This court is not convinced that she will utilize skills she has been provided to maintain a safe and clean living environment, adequately protect her children from harm, provide for her children's basic needs, and use alternative forms of discipline once supervision ceases.

From our review of the record, we agree the mother has not gained insight into how she will parent, provide for, and keep all four children safe once she is alone without the help of service providers. While the mother showed progress in her ability to keep all four children safe as supervised visits at the service provider's office went on, once a visit took place outdoors at a park—approximately one year after the mother started receiving services—the mother walked away from the youngest two children while they were playing on equipment. When the service provider told the mother she needed to stand near the small children in order to ensure they were safe, the mother explained the lapse by noting she was not used to visits at the park. We do not mean to place undue emphasis on one incident, but it suggests the mother has not yet cultivated a sense of what is dangerous for these four young children.[2] Additionally, the mother, who was evicted for failure to pay her rent approximately two months before the termination hearing, seemed to

---

[2] Before the children's removal, DHS received a report the mother was leaving the four children—then ranging in ages from approximately nine months to five years old—home alone, sometimes several times a day for up to an hour at a time. When a social worker went to the mother's home to question her about the report, the mother was seen walking up to her home without any of the children, who were then located inside. The mother maintained she had just stepped outside for a moment and never left the children home alone for longer periods of time. However, a few weeks later, when a service provider went to the mother's home to provide transportation for the family, the mother brought only the three oldest children with her, reporting the baby was staying with a neighbor. Later, the oldest child said the baby was home alone; law enforcement conducted a welfare check and found the baby in a closet covered with blankets. As a result, the mother was charged with and ultimately pled guilty to child endangerment.

believe she would have fewer issues with money if the children were returned to her care.  She believed this in spite of the fact that her eviction meant she was no longer eligible for housing assistance and the fact the children seemed to have a history of going hungry while in the mother's care.  Based on the record before us, we cannot say a short extension will enable the mother to provide adequately for the children's needs or keep them safe.

Next, we consider whether termination of the mother's parental rights is in the children's best interests.  *See* Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting the use of an unstructured best-interests test).  While the mother loves and is bonded with her children, as we stated above, she is not yet able to resume caring for the young children.  "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together."  *A.B.*, 815 N.W.2d at 778 (citation omitted).  Once the statutory time period lapses, "termination proceedings must be viewed with a sense of urgency."  *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).  As with all children, these children need and deserve to be safe and experience permanency.  *See In re J.E.*, 723 N.W.2d 796, 802 (Iowa) (Cady, J., concurring specially) (noting the "defining elements in a child's best interests" are the "child's safety and his or her need for a permanent home").  For these reasons, termination of the mother's parental rights is in the children's best interests.  We affirm.

**AFFIRMED.**